

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00424-CR

ROCKCALE HARRIS                                                APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1394441D

----------

## MEMORANDUM OPINION[1]

----------

In three issues, Appellant Rockcale Harris appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

In the evening of Saturday, October 18, 2014, Eric Edwards hosted a party at his house to celebrate his birthday. The guests included various family members and friends, including Eric's brother Derrick, and Eric's friend and former roommate, Harris. Many of the guests were consuming alcohol and marijuana.

At some point in the evening, Eric overheard that Harris was planning to call someone else to bring more marijuana to the party. This offended Eric, who felt that Harris was being disrespectful by not consulting with him first before inviting someone else to bring marijuana to his home. When Eric confronted Harris about this, the two started "having words," and then the situation escalated when Harris called Eric's mother a "b****."

According to Eric, Derrick became upset at Harris's remark about their mother, and then Derrick, too, began to confront Harris. Eric then told Harris to leave, and he did. Four or five other party guests, including Harris's cousin Brandon, also left with Harris to return to Harris's house, which was located approximately five-minutes' walking distance away. According to Eric, during the verbal exchange, no one talked about having any weapons.

Later that evening, Brandon and another group of people returned to Eric's house. After Eric told them to leave, an argument broke out and Derrick's son hit Brandon. Brandon took off running down the street and returned shortly

2

thereafter with Harris and three other people. Harris was holding his hand behind his back as he approached Eric's house.

According to Eric, when he, Derrick, and a few other party guests met Harris's group in the street, he heard Derrick say to Harris, "Oh, n****, you gon' bring a gun to a fight." Eric also said he heard Harris reply, "N****, the gun already cocked." Derrick provided nearly identical testimony.

Eric testified that as the two groups approached each other, he was focused on one member of Harris's group, Kendrick Adams, because Kendrick was the largest one. But just as he was preparing to fight with Kendrick, Eric heard Derrick say, "Awe, man, this—I—this n**** just shot me." At that point, although he had heard no gunshots, Eric realized that Derrick had been hit.

The bullet entered Derrick's mouth, knocked out his teeth, and put a hole under his tongue. But he survived. And, after two surgeries and rehabilitative therapy, Derrick recovered.

Harris was arrested and charged with aggravated assault with a deadly weapon, but at trial Brandon testified that he, not Harris, shot Derrick. Brandon claimed that after he had "gotten into it" with Eric, he went to his friend's house, retrieved a gun, and returned with it to Eric's house. According to Brandon, he was not aiming at Derrick, but "just shot," and he accidentally hit him. Brandon further testified that Harris was not even present when Derrick was shot. Despite Brandon's testimony, Harris was convicted of aggravated assault with a deadly weapon and sentenced to 37 years' confinement.

3

**Discussion**

## I. Lesser-included offense instruction

In his first issue, Harris argues that the trial court erred in denying his request to submit a jury instruction of simple assault as a lesser-included offense of aggravated assault with a deadly weapon.  *See* Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (West 2011).

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

An offense is a lesser-included offense of another offense if the indictment for the greater offense either (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts (including descriptive averments, such as nonstatutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.  Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2006); *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).  In determining whether a lesser-included offense has been established, we use a two-step analysis, looking first at the facts and elements as alleged in the charging instrument, as well as at the statutory elements of the offense.  *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).  This is a question of law and does not depend on the evidence introduced at the trial.  *Id.* at 535.  In the

4

second step of our analysis, we consider whether the evidence presented at trial supported giving the instruction to the jury. *Id.* at 536.

Contrary to Harris's suggestion in his brief, Texas courts have rejected a per se rule that proof of the offense of assault causing bodily injury is included within the proof necessary to establish the offense of aggravated assault with a deadly weapon. *Irving v. State*, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005). In *Irving*, the court of criminal appeals held that assault causing bodily injury was not a lesser-included offense of assault with a deadly weapon where the conduct constituting the lesser-included offense—grabbing the complainant and falling on top of her—was different from the conduct which was alleged in the charging instrument for the appellant's aggravated-assault charge—striking the complainant with a baseball bat. *Id.* at 845–46.

Similarly, in this case Harris sought an instruction of simple assault causing bodily injury based on testimony that Harris may have punched Derrick. But, as in *Irving*, the simple assault conduct required different proof than the aggravated assault alleged in the charging instrument. Here, the indictment alleged that Harris shot Derrick with a firearm. Because punching Harris in the face is not the same conduct as shooting Harris in the face, simple assault is not a lesser-included offense. *See id.* at 846. We therefore overrule Harris's first issue.

5

## II. Prior conviction

In his second issue, Harris argues that the evidence was insufficient to prove his prior conviction for the purpose of enhancement. Specifically, Harris takes issue with certain exhibits admitted as evidence of four prior convictions because the State's fingerprint expert could not verify the fingerprints on those exhibits.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* Any type of evidence, documentary or testimonial, might suffice to prove this connection. *Id.* at 922. As the court of criminal appeals has explained, the proof that is adduced to establish this connection resembles a jigsaw puzzle—the trier of fact fits the pieces together, weighs the credibility of each piece, and determines if the pieces fit together sufficiently to complete the puzzle. *Id.* at 923 (citing *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988) (op. on reh'g)).

The trial court admitted six exhibits—Exhibits 31, 32, 33, 34, 35 and 36—purporting to evidence prior convictions of Harris. The State relied upon two of these exhibits—Exhibits 31 and 33—to seek habitual offender punishment enhancement based upon prior convictions. *See* Act of June 14, 2013, 83rd Leg., R.S., ch. 663, 2013 Gen. Laws 1756, 1756 (amended 2015) (current

6

version at Tex. Penal Code Ann. § 12.42(d) (West Supp. 2016)) (providing that punishment may be enhanced if it is shown in the trial of a felony offense[2] that the defendant has previously been convicted of two felony offenses). Exhibit 31 evidenced a 2008 conviction for the felony offense of assault on a public servant. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2016). Exhibit 33 evidenced a 2012 conviction for the felony offense of injury to a child causing bodily injury. *See id.* § 22.04(a)(3), (f) (West Supp. 2016).

Both Exhibits 31 and 33 identify Harris by his name, date of birth, sex, race, county ID number (CID), and state ID number. Exhibit 31 also identifies Harris by his fingerprints. At trial, Deputy Paul Rojas with the Tarrant County Sheriff's Department identified those fingerprints as belonging to Harris, a fact that Harris does not dispute.

Exhibit 35, an exhibit that Harris does not complain about on appeal, also identifies Harris by his name, date of birth, sex, race, CID number, and state ID number, as well as by his fingerprints. Additionally, the same name, date of birth, race, sex, and CID identified in Exhibits 31, 33, and 35, are reflected in the indictment in this case and the fingerprint card admitted in this case as Exhibit 30.

Contrary to Harris's argument that there was no testimony as to the significance of the CID referenced in this case, Deputy Rojas testified that each

---

[2]Aggravated assault is a felony offense. Tex. Penal Code Ann. § 22.02(b) (West 2011).

person who is booked into the Tarrant County Jail is assigned a unique CID. He also identified Harris's CID as it appeared on the fingerprint card and all six of the convictions admitted into evidence by the trial court in Exhibits 31, 32, 33, 34, 35, and 36.

Considering all of these exhibits together, this evidence was sufficient to link Harris to the two convictions reflected in Exhibits 31 and 33 that were used to enhance his sentence. *See Ramirez v. State*, No. 02-13-00540-CR, 2015 WL 4652771, at *8 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (holding appellant's identity in prior convictions was shown through evidence of common CID in other documents with matching fingerprints); *Jones v. State*, No. 02-11-00060-CR, 2012 WL 3735890, at *2 (Tex. App.—Fort Worth Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication) (holding evidence was sufficient to establish appellant's identity in prior conviction where exhibits shared identical CID number and date of birth); *Norris v. State*, No. 02-10-00468-CR, 2012 WL 2135594, at *3 (Tex. App.—Fort Worth June 14, 2012, pet. ref'd) (mem. op., not designated for publication) (holding evidence of identical CID number, date of birth, and full name was sufficient to link appellant to prior convictions). We therefore overrule Harris's second issue.

## III. Motion for continuance

In his third issue, Harris argues that the trial court abused its discretion in denying his request for a continuance based on the State's failure to turn over

medical records in a timely manner.[3]  The police department obtained more than 300 pages of Derrick's medical records during its investigation of the shooting, but Harris's counsel did not receive those medical records until November 2, 2015, the first day of trial.  On the second day of trial, Harris filed a motion for continuance, arguing that his counsel needed additional time to review the medical records to determine whether he needed to hire an expert witness.

We review a trial court's denial of a motion for continuance based upon surprise for an abuse of discretion.  *Jones v. State*, 501 S.W.2d 677, 678 (Tex. Crim. App. 1973).

Parties may be granted a continuance after trial has begun under article 29.13 of the code of criminal procedure "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had."  Tex. Code Crim. Proc. Ann. art. 29.13 (West 2006).  First, Harris made no showing, in his motion or otherwise, that the existence of the medical records could not have been anticipated by reasonable diligence.  *See id.*; *Jones*, 501 S.W.2d at 678–79 (holding counsel made no showing of reasonable diligence to justify his failure to anticipate

---

[3]To the extent that Harris argues that the State's failure to disclose the medical records violated his rights under the due process clause, we decline to address such argument because it was not presented at trial and it was therefore not preserved.  Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016).

witness's identification of appellant as robber). Given the nature and extent of the injuries alleged in this case, it can hardly be said that Harris would not reasonably anticipate that such medical records would exist. *See Williams v. State*, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985) (noting admission of complainant's medical records in prosecution for aggravated assault); *Sizemore v. State*, 387 S.W.3d 824, 829–30 (Tex. App.—Amarillo 2012, pet. ref'd) (same); *see also Fears v. State*, 479 S.W.3d 315, 325 (Tex. App.—Corpus Christi 2015, pet. ref'd) (holding appellant did not show reasonable diligence in requesting continuance to review CPS records in child sexual abuse case).

Second, while Harris asserted that he needed a continuance to review the medical records and possibly hire an expert, he made no attempt to show how a fair trial could not be had without the continuance. *See Barney v. State*, 698 S.W.2d 114, 127 (Tex. Crim. App. 1985) (holding defendant did not establish a fair trial could not be had without continuance to investigate extraneous offense that took place during trial).

Nevertheless, assuming without holding that the trial court erred in denying Harris's motion for continuance, Harris has not shown that he was prejudiced by the denial. *See* Tex. Code Crim. Proc. Ann. art. 29.13; *see also Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010) (holding, in context of pretrial motion for continuance, that reversible error is predicated on both error in the denial of the continuance and resultant harm). Furthermore, during argument on the motion, the State admitted it was not going to use the medical records in

10

its case-in-chief and when Harris's counsel stated that he had not had time to review the records in their entirety, the court responded:

> [S]ince they are not using them in their case in chief—as [the prosecutor said], he was going to rely upon the testimony of his witness. I can also see that you would like to read them and go through them in case there is anything exculpatory to you or your client.
>
> I am going to grant your motion for the additional investigative funds. You have your investigator with you today. I am going to pay him throughout the trial. I will deny your motion for a continuance, as he's not using it in his case in chief.

Harris did not reurge his continuance at any later time during the trial, nor does he now articulate how the trial court's approach of allowing the investigator to review the records during the trial was insufficient or harmful.

And it does not appear that Harris was required to adjust his trial strategy based on the production of the records. The extent or nature of Derrick's injuries played no role in Harris's defense, which was to deny that he shot Derrick and, instead, to proffer Brandon as the shooter. Absent a showing that he was somehow prejudiced by the trial court's denial of his continuance motion, Harris has demonstrated no harm.

For these reasons, we overrule Harris's third issue.

## Conclusion

Having overruled Harris's three issues, we affirm the judgment of the trial court.

11

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  SUDDERTH, KERR, and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 30, 2017